## TOLMIE *v.* WOODWARD TAXICAB CO.

1. AUTOMOBILES — HIGHWAYS AND STREETS — MUNICIPAL CORPORATIONS—CONTRIBUTORY NEGLIGENCE—PERSONAL INJURIES.

In an action for personal injuries to plaintiff by being hit in crossing a city street by a taxicab, the burden rests on him to establish that he was free from contributory negligence.

2. SAME—USE OF PUBLIC STREETS.

Where plaintiff and others crossed a city street and his companions waited for a taxicab to pass, but plaintiff passed in front of the car and was struck by it, and plaintiff's testimony did not show that the driver was on the wrong side of the street or that he was proceeding at excessive speed, but that the plaintiff looked twice and failed to perceive the taxicab, or to hear any warning signal although other witnesses testified that the horn was sounded, he was negligent as matter of law for failing to exercise his faculties to protect himself.[1]

KUHN, OSTRANDER, and BIRD, JJ., dissenting.

Error to Wayne; Hally, J. Submitted October 14, 1913. (Docket No. 43.) Decided January 5, 1914.

Case by Frederick Tolmie against the Woodward Taxicab Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*E. T. Berger (E. R. Milburn,* of counsel), for appellant.

*Florian, Moore & Wilson,* for appellee.

STEERE, J. This is an action in tort brought to recover damages for personal injuries claimed to have

[1] The authorities on the duty of pedestrians to look out for automobiles are collated in notes in 3 L. R. A. (N. S.) 345; 20 L. R. A. (N. S.) 232; 38 L. R. A. (N. S.) 488; and 42 L. R. A. (N. S.) 1179.

been sustained by plaintiff as a result of having been run against and knocked down by one of defendant's taxicabs on May 7, 1911, while he was crossing Jefferson avenue in the city of Detroit.

The negligence charged in plaintiff's declaration and relied upon as ground of recovery is failure to comply with the requirements of section 7, subd. 2, of Act No. 313, Pub. Acts 1909, in the particular that the driver of defendant's taxicab did—

"Approach the plaintiff herein, who was then lawfully in the roadway of the public highway hereinbefore described, at a much higher rate of speed than ten miles per hour, and did not slow down to ten miles per hour before reaching him, and did not give any warning whatsoever of the approach of the motor vehicle or automobile aforesaid, and did not use any precaution whatever to insure the safety of the plaintiff herein."

The undisputed testimony shows that on Sunday, May 7, 1911, plaintiff, a teamster 32 years of age, was walking with two companions across Jefferson avenue from the south side, going north on the Beaubien street crosswalk. They were walking abreast; plaintiff being farthest east. Just as they had passed beyond the north rail of the street car track running along Jefferson avenue, a taxicab of defendant's approached them from the east. Plaintiff continued forward towards the north curb; his two companions stepping back. He was struck by the front of the taxicab and fell. He at once arose to his feet and proceeded with his companions on their way. The car stopped at or about the time he fell, and the driver dismounted. Plaintiff testifies:

"The driver asked me if I was hurt and I said I was. There were three men in the automobile besides the driver, but I didn't talk to them."

He very soon was in communication with legal counsel and on the evening of that day was visited by

a doctor sent by the attorneys in this case. The latter were authorized to commence proceedings on the following day, a contract being entered into giving them an interest in the suit, and on May 18th the action was begun. Otherwise than by commencement of the suit, no notice of the injury or claim of plaintiff, or demand for settlement, was made upon defendant, except a letter from plaintiff's attorneys notifying defendant of their interest in the suit. On the trial plaintiff introduced testimony that his hip, head, back, and knee were injured, confining him to his bed for some time, and that he lost the sight of one eye. At the conclusion of plaintiff's testimony, and again at the close of all the evidence, counsel for defendant moved the court to direct a verdict in its favor on the ground that no actionable negligence on the part of defendant's driver was shown and particularly plaintiff's own testimony disclosed that he was guilty of gross carelessness and contributory negligence. These motions were denied and the case submitted to the jury, resulting in a verdict for plaintiff of $1,000. Defendant thereafter moved for a new trial on substantially the same grounds as the motions, and also that the verdict was against the weight of evidence and excessive, which was refused, and the case has been removed to this court for review, by writ of error.

Plaintiff's evidence as to the accident consisted of his own testimony, with an added statement in the record that a witness named William Rowe was examined and cross-examined. His testimony is claimed to have been corroborative but is not contained in the record. The original bill of exceptions is indorsed "O. K." by plaintiff's counsel, and the trial judge certifies that it contains substantially all the testimony produced upon the trial bearing upon the questions raised for review.

Plaintiff gave no testimony as to the speed at which

the car was running other than that he saw it 15 or 20 feet away and jumped, being struck by it as it swerved towards the curb. His testimony as to notice of approach is that he heard no warning. Of the accident he testifies on direct examination:

"I looked for any vehicles that might be passing as I crossed from the south side of the street to the north side. I looked again when I was about in the middle of the car track. I looked both east and west, and at the time I saw no vehicles approaching. I was not aware of the fact that an automobile was coming until it was right on top of me. The automobile was going west and was coming towards me from the east. When I saw the automobile I tried to make for the curb but was knocked down, being struck by the front of the car. After I was struck I was taken to the New Daily Hotel. After I was struck the car moved about 35 feet. I heard no warning or horn of any kind. On arriving at the hotel I was treated by Dr. Williams. I went to bed and was confined to my bed for about three months. My side was injured, and my sight; my right eye has failed me altogether. I was struck in right side and my back was injured."

And on cross-examination:

"I did not have any drinks and was not drunk. My eyes were perfectly clear and I had my wits about me all the time, and there was nothing to interfere with my walking along the street safely and carefully. The streets were not busy on Jefferson avenue, and there were not many vehicles passing at the time I started to cross the street. It was a clear day, and a bright day, and the street was comparatively clear. I had a clear view either way. One can look up Jefferson avenue for about a half a mile, and when I got to the north rail of the car track on Jefferson avenue I looked east and could see for about a half a mile and I saw no vehicle coming. The distance from the north rail to the place where I was struck is about 15 feet. When I saw the machine was going to hit me I jumped forward toward the curb. I saw it was going to hit me when it was about 20 feet away; that was when I first saw the automobile. It

was about 15 feet away and I tried to jump out of the way.

"*Q*. How far did you jump?

"*A*. I could not tell you; the automobile was any way right into me.

"*Q*. Right into you?

"*A*. Turned off and shot into me.

"*Q*. Turned off towards the curb?

"*A*. Shot into me.

"*Q*. Turned off this way (indicating)?

"*A*. In the curb.

"*Q*. So you tried to get out of the way and turned around immediately?

"*A*. They could not get out of the way.

"*Q*. So near the curb it could not get out of the way?

"*A*. When they shot into the curb they was—

"*Q*. Shot into the curb?

"*A*. Didn't hit the curb.

"*Q*. Very close to it?

"*A*. Very close to the edge.

"*Q*. So that from the middle of the road to the point where you were actually struck by the automobile was about five feet?

"*A*. Yes, sir.   *   *   *

"*Q*. Kept right on going?

"*A*. Yes, sir; could not stop it.

"*Q*. Pushed you along with it?

"*A*. Threw me over there.   *   *   *

"*Q*. Where did it throw you?

"*A*. It throwed me into the middle of the road. He stopped the car about 30 feet past where I was struck. The force of the automobile pushed me over into the middle of the road and stopped about five or six feet past me.   *   *   *   I did not waste any time starting my suit.   *   *   *   I gave my lawyers the case day after I was hurt. I signed the paper giving my attorney an interest in the lawsuit.   *   *   *

"*Q*. When you looked to the right or to the east, was the automobile that struck you in sight?

"*A*. No, sir; not the first time.

"*Q*. Were the three of you walking together?

"*A*. Yes, sir.

"*Q*. Which side were you on?

"*A*. I was on the right side.

"*Q.* Right side, outside of the two, to the east of the other two.

"*A.* To the east of the other two.

"*Q.* Were either of them hit by the automobile?

"*A.* No, they jumped the other way.

"*Q.* They jumped back?

"*A.* Yes, sir."

Defendant produced three witnesses to the accident, occupants of the car; the testimony of one being printed in the record with the statement that the testimony of the others is substantially the same. The one testifies that they had been to Belle Isle and were running down Jefferson avenue at about ten miles an hour; that as they approached Beaubien street and first saw the three men on the crossing 45 or 50 feet away they were going not more than five or six miles an hour; that the driver sounded his horn and two of the men stopped, the one in the middle endeavoring to check the one on the east of him, but that he threw his hands out and kept right on to a point in front of the car, the driver blowing his horn and slowing up all the time and trying to get out of his way until the man was struck; that the fellow just ran into him, and the automobile stopped right there, "maybe it went two or three feet after it hit him; that the one hit did not appear to be looking at the automobile but walked straight ahead with his head down."

Plaintiff's own testimony shows that he was a teamster by avocation, engaged in that calling before and after the accident; that he was a man of mature years, familiar with the use and dangers of highways, his sight good, and possessed of all his faculties; that in the afternoon of a bright, clear day he was crossing one of the main thoroughfares of the city, upon which there was at the time no rush or confusion of travel, with two companions, the three walking abreast, he being on the side next to an ap-

proaching automobile, coming on its proper side of the street, with a clear view in that direction for half a mile; that he looked in that direction and saw nothing, although his companions on the side farthest away did see the car and avoided it; that under those conditions he walked right on into the path of the approaching vehicle and was thrown down by it, after which he arose and walked to a hotel, although he testifies that his heart, kidneys, liver, stomach, and lungs had been misplaced, disordered, seriously and permanently injured, and the synovial membrane surrounding his knee joint was torn apart. This being true, the inference would be that he just then needed a physician rather than an attorney, but he says he lost no time in starting his suit, and the first physician who visited him, on the evening of the accident, testifies he was sent there by plaintiff's attorney.

The extent and nature of plaintiff's injuries, while matters of serious contention, are within the field of disputed facts to be decided by a jury, if plaintiff was shown to have been in the exercise of due care and free from contributory negligence. It was as essential to the right of recovery for plaintiff to affirmatively show freedom from negligence on his own part as to show negligence on the part of defendant.

Under the conditions described by himself, with good eyesight and his wits about him, it seems impossible that plaintiff could not have seen the danger in time to avoid it, had he been reasonably alert and used his eyes and ears as the average reasonably prudent and cautious man should and would under like circumstances, and as his companions did. Instead of showing absence of contributory negligence, his evidence shows its presence. His testimony shows that the taxicab was on the proper side of the street, and his only proof of negligence on the part of the

driver (against the otherwise undisputed testimony of defendant that the speed was not excessive, that it was reduced on approaching the crossing, that the horn was repeatedly sounded, and when the three pedestrians separated and possibility of collision was indicated every effort was made to avoid plaintiff and stop the car) is that he saw and heard nothing of the car until it was "right on top of me," "about 20 feet away," "about 15 feet away," "anyway right into me," and struck him before he could jump out of the way.

Counsel for plaintiff cite *Gerhard* v. *Motor Co.*, 155 Mich. 618 (119 N. W. 904, 20 L. R. A. [N. S.] 232), and *Bouma* v. *Dubois*, 169 Mich. 422 (135 N. W. 322), in support of their contention that plaintiff in crossing the street was not required to be constantly on the lookout, or to stop, look, and listen, as in case of crossing steam or electric railway tracks, and that both the question of defendant's negligence and plaintiff's contributory negligence were questions of fact for the jury. His claim that he heard no horn or other warning may be conceded to raise an issue, as against defendant's testimony that the horn was timely and repeatedly sounded, on the question of the driver's negligence in failing in that particular, and possibly an inference of his negligence arises from plaintiff's testimony in other particulars, but plaintiff's own testimony and the undisputed facts, taken in the most favorable light for him, show that he himself did not make such reasonable use of his senses as an ordinarily prudent and careful person would have exercised under like circumstances. While a traveler on foot passing along or crossing a public highway has the same right to use it as a vehicle of any kind, "pedestrians as well as all others are 'bound to exercise care according to the circumstances, and especially bound to the alert and watchful performance

of the duty of all travelers on all highways to look where they are going' " and not walk blindly into danger. Babbitt on Motor Vehicles, § 272. The standard of duty of the driver in cases of children, aged persons, and those under other disability, when discovered, requires a higher degree of care, according to the circumstances, but no such conditions are shown or claimed here.

In *Gerhard* v. *Motor Co., supra,* plaintiff was a boy 14 years old, a "jumper" on a delivery wagon, his work being to deliver merchandise from a delivery wagon to customers along the streets. An automobile of defendant's passing close to the delivery wagon at an alleged excessive rate of speed struck him in the back and side, dragged him about 66 feet, and seriously injured him. The boy was within 1½ feet of his wagon with his back toward the oncoming machine, attending to his duties, and claimed to have recently looked before getting down from his wagon but did not see the automobile which in its course came around a corner from Woodward avenue to the street on which the accident occurred. The driver knew the type of delivery wagon and knew it was the habit of some one with it to get down from it and run into houses to deliver packages. This was the case of a young boy, engaged in his work, obscured by a delivery wagon from which the driver knew deliveries were made, struck by a passing automobile going in the same direction at an excessive rate of speed, and the court held under the conflicting testimony the issues were for the jury.

In *Bouma* v. *Dubois, supra,* plaintiff, a woman weighing 225 pounds, was on her way to church in the evening, accompanied by her daughter. It was after nightfall and raining. While attempting to cross Granville avenue, an intersecting highway, she was struck by defendant's automobile, thrown down, and dragged about 60 feet, receiving serious injuries.

Her testimony and that of her daughter indicated that they had proceeded with caution, looking and listening, that the car without sounding warning and without proper lights, driven at great speed, suddenly came upon them out of the obscurity. This court found that the very conflicting testimony was properly submitted to a jury. In both of the above cases the circumstances were entirely different from the one at bar, involving accidents in the evening, to persons under more or less disability, with the testimony in conflict as to controlling issues of fact.

Here, under the undisputed conditions surrounding the accident and eliminating all issues of fact which conflicting evidence raises, plaintiff's own testimony shows that he failed to use his senses and exercise that reasonable degree of care to avoid injury, proportionate to the circumstances which the law makes essential to recovery, and by his own carelessness and negligence contributed to the same.

The judgment is reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, STONE, and MOORE, JJ., concurred with STEERE, J.

OSTRANDER, J. I think the question of plaintiff's contributory negligence was for the jury.

KUHN and BIRD, JJ., concurred with OSTRANDER, J.