## UDE v. FULLER.

AUTOMOBILES—HIGHWAYS AND STREETS—CONTRIBUTORY NEGLIGENCE.
In approaching a street crossing, plaintiff's son, an infant of eighteen years, observed an automobile coming towards him from a side street at a high rate of speed. It was about one hundred feet away when he looked and he did not look again until he was ten feet away from the motor car. The day was clear. The view was unobstructed. He knew that it was dangerous to cross in front of a car so large and heavy as the one in question, but proceeded on his way without again observing the machine, and was struck and injured. *Held*, that his evidence failed to establish the son's freedom from contributory negligence, and the court should have directed a verdict for defendant.

Error to Kent; Connine, J., presiding. Submitted June 22, 1915. (Docket No. 100.) Decided July 23, 1915.

Case by Samuel W. Ude against Clayton W. Fuller for damages caused by personal injuries to plaintiff's

minor son. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Hatch, McAllister & Raymond,* for appellant.

*Edward N. Barnard,* for appellee.

KUHN, J. This is a personal injury case, brought by the plaintiff against the defendant for loss of services of plaintiff's minor son and expenses incurred in caring for him on account of such personal injury. The son, while riding a bicycle, collided with an automobile driven by the defendant, at the junction of two public streets in the city of Grand Rapids. The accident occurred at noon on the 2d day of June, 1913, a bright, clear day. Henry Ude, the son, a young man 18 years of age, was going east on Oak street, west of Commerce avenue, and, according to his testimony, was riding on the south or righthand side of the street, about 2 feet from the curb. When he reached a point near the west curb of Commerce avenue, he saw the defendant driving an automobile on the east side of Commerce avenue about 100 feet away, going south at a high rate of speed—as he claimed, at the rate of 20 miles an hour. It appears that a building known as the Merchants' Hotel was in the course of erection at the northwest corner of Commerce avenue and Oak street, and that building material was piled in the streets adjoining it. This is the reason assigned by the defendant for being compelled to drive upon the east side of Commerce avenue in driving south. The negligence complained of was that the automobile was being run at a righ rate of speed and that it was on the wrong side of the street.

On cross-examination Henry Ude described his conduct as follows:

"*Q.* How long did you look at the car?
"*A.* Just gave it a glance; saw it coming.

"*Q.* And you saw it was coming fast or slow?

"*A.* Coming very fast.

"*Q.* And how long did you consider the question of whether you could get across in front of it?

"*A.* Why, just a minute. I could see that, where he was and where I was, coming at the rate of speed he should have, I could have got across any time.

"*Q.* That is what you thought. You said you supposed you could get across there, so you started?

"*A.* Why, certainly.

"*Q.* Did you increase or slacken your speed?

"*A.* I remained the same that I was going.

"*Q.* You remained the same?

"*A.* Going at the same speed I was going.

"*Q.* Did you look at the car while you were going?

"*A.* No; just the first time.

"*Q.* Did not pay any attention to that car, whether it slackened up or not?

"*A.* Why, no; not at the time.

"*Q.* Now, how close was the car to you the next time you saw it?

"*A.* About 10 feet away.

"*Q.* About 10 feet away, and you had your hat boxes in each hand, did you?

"*A.* Yes, sir; yes.

"*Q.* So that from the time you first saw the car, and concluded that you could go across in front of it, you did not look at the car again until it was about 10 feet from you?

"*A.* No, sir.

"*Q.* Where were you looking?

"*A.* Why, I was glancing around the other way, looking the other way, to see if there was anything coming from the other way.

"*Q.* Well, was there anything coming from the south?

"*A.* There was not.

"*Q.* So that, when you started to cross that street, you knew that this car was coming down from the north, didn't you?

"*A.* Yes, sir.

"*Q.* And you knew it was coming pretty fast, didn't you?

"*A.* Yes, sir. * * *

"*Q.* Did you increase or slacken your speed at all?

"*A.* I increased.

"*Q.* When?

"*A.* When I saw the car about 10 feet away from me.

"*Q.* Was that the first time you did anything to get out of the way?

"*A.* It was.    *    *    *

"*Q.* And if when you started to go across the street, if you had looked up after you had first seen him, you could see him any time you looked at him, couldn't you?

"*A.* Why, certainly.

"*Q.* There wasn't any building material there to obstruct your view in any way?

"*A.* Not on the corner.

"*Q.* Any place to obstruct your view?

"*A.* No; there was not.    *    *    *

"*Q.* Now, you say when you first saw that automobile it was going fast, do you?

"*A.* It was.

"*Q.* Well, you must have seen it move some distance to know whether it was going fast or slow, didn't you?

"*A.* Well, a glance is enough to take that in.

"*Q.* Well, how long did you look at that when you saw that it was going fast?

"*A.* Gave it a glance, and that was all.

"*Q.* Just gave it a glance?

"*A.* I looked.

"*Q.* Well, how much faster was it going than you were?

"*A.* I could not say.

"*Q.* Well, you looked at it long enough to know that it was coming very fast, did you?

"*A.* Yes, sir.    *    *    *

"*Q.* You were satisfied from a glance that the automobile was going fast, weren't you?

"*A.* Why, certainly.

"*Q.* And you were going slow, weren't you?

"*A.* Yes, sir.    *    *    *

"*Q.* And was that the first time you looked when you got over to the corner?

"*A.* Yes; naturally, I looked to the corner.

"*Q.* No; I didn't ask you naturally. Was that the first time you looked at the corner.

"*A.* It was.

"*Q.* And you were just about to start across Commerce street then, were you?

"*A.* I was at the corner; yes.

"*Q.* You were at the west corner, going slow on your bicycle?

"*A.* Yes.

"*Q.* And you were north of the curb?

"*A.* Two feet.   *   *   *

"*Q.* But if you had paid any attention after that first glance at that automobile that was coming down there at that high rate of speed, you could have avoided this accident, couldn't you?

"*A.* I looked at this—

"*Q.* No; now, answer that question. You could have avoided this accident, couldn't you?

"*A.* Yes, sir.   *   *   *

"*Q.* You realized that auto was approaching that corner very fast?

"*A.* I did; yes, sir.

"*Q.* Before you started to cross?

"*A.* Yes, sir.

"*Q.* And then you started to cross and paid no more attention to it until it got within 10 feet of you?

"*A.* That is so.

"*Q.* And then you were in a place of danger, weren't you?

"*A.* I was.   *   *   *

"*Q.* Did you have a brake on your automobile, or on your bicycle?

"*A.* I do.

"*Q.* Safety brake?

"*A.* Yes; coaster brake.

"*Q.* Coaster brake. All you had to do is just push back on the pedals and it stopped your wheel?

"*A.* Yes, sir.

"*Q.* And you were going very slow?

"*A.* Yes, sir.

"*Q.* So that if you had made a glance or paid any attention to that automobile, after you first saw it, you would not have gone over in front of it, would you?

"*A.* I would not.

"*Q.* You did not pay any attention, while you were going across there, to that automobile, after you saw it the first time, until you got yourself right in front of it, did you?

"*A.* I did not.

"*Q.* And you were going right across in front of the automobile?

"*A.* Yes, sir.    *    *    *

"*Q.* And yet you had it in your mind, when you looked at that car, that it was going at a high rate of speed?

"*A.*. I did.

"*Q.* A great, big car, wasn't it?

"*A.* Yes.

"*Q.* And it is a dangerous thing to run in front of one of them, isn't it?

"*A.* It is; yes.

"*Q.* You knew that?

"*A.* Yes, sir.

"*Q.* You had been riding around on the streets here on bicycles, hadn't you?

"*Mr. Barnard:* Oh, that has all been gone over.

"*Q.* Haven't you?

"*A.* Yes, sir.

"*Q.* And you know it to be a dangerous thing to get out in front of an automobile going at a high rate of speed, didn't you?

"*A.* Yes, sir.

"*Q.* And there wasn't any other thing on the street there to avoid, was there?

"*A.* There was not.

"*Q.* Nice, bright, clear day, was it?

"*A.* Yes; it was; yes, sir.

"*Q.* Right in the middle of the day?

"*A.* 12:05, about."

It is urged by counsel for appellant that under this testimony it is very clear that Henry Ude was guilty of contributory negligence; and while the learned trial judge stated, after hearing this evidence, that he considered it a very close question, he submitted the question of the contributory negligence to the jury. In the instant case it appears beyond doubt that Henry Ude saw the automobile coming on Commerce avenue before he attempted to cross the street, when it was about 100 feet away, and that he continued on his way without looking again until he was within 10 feet

of the automobile and it was too late for him to avoid the accident. In our opinion this situation presents a stronger case of contributory negligence than that presented to this court in *Gibbs* v. *Dayton,* 166 Mich. 263 (131 N. W. 544), in which case it was said:

"We are not prepared to hold as a matter of law that there was no evidence of negligence on the part of the automobile driver, but we are of the opinion that plaintiff failed to discharge the burden of proof resting upon him to show absence of contributory negligence on the part of decedent.

"The boy was experienced in the use of the bicycle and in riding about the streets in the course of his employment as a delivery boy. There was nothing to obscure his vision, and he had only the automobile and the other bicycle to avoid on a paved street 67 feet wide. If he had looked when he started to cross the street, he must have seen the oncoming automobile a few rods away, in which event it would have been negligent to attempt to cross directly in front of it. If he did not look until the automobile was upon him, he did not exercise common prudence. *Zoltovski* v. *Gzella,* 159 Mich. 620 (124 N. W. 527, 26 L. R. A. [N. S.] 435, 134 Am. St. Rep. 752). In view of this conclusion, it becomes unnecessary to consider the other interesting questions presented by the briefs."

In that case there was doubt as to whether the boy saw the oncoming automobile a few rods away, but here there is no question that the boy saw the oncoming car when it was still 100 feet away. We cannot escape the conclusion that it was conclusively shown by the plaintiff's own testimony that he failed to use that reasonable degree of care to avoid injury proportionate to the circumstances which the law makes essential to a recovery, and by his own negligence contributed to the accident. *Stevenson* v. *Railway,* 167 Mich. 45 (132 N. W. 451); *Tolmie* v. *Taxicab Co.,* 178 Mich. 426 (144 N. W. 855). In our opinion this presents a clear case of contributory negligence, and, as it appears under the testimony of Henry Ude that the plaintiff

cannot recover, the judgment is reversed, and no new trial granted.

In view of this conclusion, it is unnecessary to consider the other questions presented by the briefs.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.