CREITZ *v.* WOLVERINE ENGINEERING CO.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—HIGHWAYS AND STREETS —BRIDGES—DIRECTED VERDICT.

> In an action against a bridge contractor for damages to plaintiff's automobile, caused by a collision with a gasoline engine on a temporary bridge, 12 or 13 feet wide, where the accident occurred in broad daylight, plaintiff had an unobstructed view, knew that the work of constructing a new bridge was in progress, and the exercise of proper care would have prevented the accident, plaintiff was guilty of contributory negligence, as a matter of law, precluding his recovery.

Error to Eaton; Smith (Clement), J. Submitted January 18, 1921. (Docket No. 37.) Decided March 30, 1921.

Case by Charles Creitz against the Wolverine Engineering Company for damages to an automobile caused by an obstruction in a highway. Judgment for plain-

tiff. Defendant brings error. Reversed, and no new trial ordered.

*Peters & Marshall,* for appellant.

*Rosslyn L. Sowers,* for appellee.

In the summer of 1919 defendant, under contract with the board of county road commissioners of Eaton county, was engaged in building a bridge across the Thornapple river. The highway had not been closed and the commissioners had put in a temporary bridge some 12 to 13 feet wide. In the progress of defendant's work it had occasion to use a gasoline engine; this it placed on the northwest corner of the temporary bridge; ample space, however, remained for public travel. Plaintiff, the field man of the Owosso Sugar Company, was cognizant of the work being done in building the bridge. He drove over the bridge both the morning of, and the evening before, the accident which occurred about 6 o'clock in the afternoon. It was daylight and bright and clear. There were some obstructions before reaching the bridge and the temporary highway required care to travel. But for 20 feet before reaching this bridge there were no obstructions, either natural or from material there piled. Plaintiff drove his automobile into the gasoline engine and the car was precipitated into the river. Plaintiff does not claim that he received any personal injuries, but the machine was badly damaged. Plaintiff in his direct examinations testified to the obstructions mentioned and stated that the radiator of the machine further obstructed his view of the highway ahead, but finally stated this distance was not over 8 feet. We quote somewhat fully from his testimony:

"*Q.* The front end of the car when you were back a distance of twenty feet would not obstruct your view of the temporary bridge?

"*A.* I don't get you there. Do you mean the floor of the bridge?

"*Q.* Yes.

"*A.* I wasn't looking for the floor. I was looking for the space between the railings.

"*Q.* You were not keeping your eyes on the floor of that temporary bridge?

"*A.* Not just at that particular time.

"*Q.* From the time you passed that pile of lumber you were not paying any attention to what was on that temporary bridge, you were looking at the railings between and at the sides of the temporary bridge?

"*A.* I saw the space between the railings.

"*Q.* Were you looking at the floor space?

"*A.* Not directly.

"*Q.* Was there anything to obstruct your view from the time you passed that pile of lumber from seeing every square foot of floor space of the temporary bridge had you looked?

"*A.* Yes, sir; because that is an impossibility at that angle. I saw the space between the railings. I was not looking directly at the floor space of the temporary bridge. There was nothing to obstruct my view from the time I passed the pile of lumber of seeing every square foot of floor space of the temporary bridge had I looked except the angle and the radiator of the car. The road leading up to the temporary bridge and for twenty feet to the north of the bridge is a little down grade.

"*Q.* Isn't it true that had you looked passing down there at the rate of speed you have placed it, of three or four miles an hour, you would have been able to see this engine as it was placed there on the northwest corner of this temporary bridge?

"*A.* I probably could have seen it, but I wasn't looking for an obstruction like that. I was not paying any attention or looking for any obstruction which might be in the roadway, or on the floor of the temporary bridge.

"*Q.* Whether or not by your looking you would have been able to see it?

"*A.* If I had looked right in that direction, I perhaps would have seen it. After I passed this pile of lumber, had I looked at the floor of the temporary bridge,

I could have seen the engine as it was placed there. There is no doubt of it, but I wasn't looking at the floor of the bridge; I was looking between the railing to the space to get through over the bridge.

"Q. You were paying attention as you came down to the railings along the side and paying no attention to whether or not there was any obstruction on the floor of that bridge?

"A. Yes, sir. I was not paying any attention to whether any planks were out of the floor of that bridge. Had I been looking directly at the floor of the bridge as I came down to it, I presume I could have seen that engine. I was not looking directly at the floor of the bridge. I couldn't help but see it had I looked in that direction.

"Q. You could have seen it a distance of twenty feet to the north end of the temporary bridge, could you not?

"A. If I was looking directly toward it, I could have seen it.

"Q. Had you looked you could have seen that engine twenty feet north of the temporary bridge?

"A. Yes, if I had looked in that direction. The roadway was practically level. I considered my brakes were in proper condition. Had I looked and seen that engine back over twenty feet to the north of the temporary bridge I would have been able to have stopped my car before I reached the north side of the bridge, but I didn't try to stop it.

"Q. You could have stopped your car in the distance between the north end of that temporary bridge and the twenty feet that you would have had there that you could have seen the engine had you looked?

"A. Yes, sir.

"Q. Had you seen that engine as it was placed there on the northwest corner of that temporary bridge, driving with care and caution you would have been able to have passed over that temporary bridge to the east of the engine without hitting it, would you not?

"A. Yes, sir. There was sufficient width between the east side of the engine and the east side of the temporary bridge to pass through in safety had I seen the engine.  *  *  *

"Q. As you were sitting in the automobile on the

day of the accident at a distance of twenty feet to the north of the temporary bridge, you could see the north end of the temporary bridge had you glanced in that direction.

"*A.* Yes, sir.

"*Q.* And had you glanced in the direction of the north end of the temporary bridge as you were sitting in your automobile you would have been able to have seen that engine?

"*A.* If I had set directly in line. There was nothing to obstruct my view between the north end of the bridge and a point twenty feet to the north. Had I glanced or cast my eyes in the direction of the north end of the temporary bridge, I could have seen that engine.

"*Q.* If you had looked to the south?

"*A.* Yes, sir.

"*Q.* You could have seen the engine?

"*A.* Yes, sir; no doubt. There was nothing between me and the north end of the temporary bridge to obstruct my vision had I glanced.

"*Q.* But you did not glance in that direction as you passed down there to see whether or not there was any obstruction there which would stop you from passing over that bridge?

"*A.* I did not.

"*Q.* Had you glanced, you would have been able to have seen it?

"*A.* No doubt of it. Had I seen the engine, I could have averted the accident. I could have seen it had I glanced towards it in that direction."

FELLOWS, J. (*after stating the facts*). The trial judge should have directed a verdict for defendant because of plaintiff's contributory negligence. It is not to be expected that a temporary bridge or even a public highway will be kept as smooth or free from obstructions or defects as the floors of places of business usually are. Therefore *Brown* v. *Stevens*, 136 Mich. 311; *Faulkner* v. *Manufacturing Co.*, 201 Mich. 182, and *Wine* v. *Newcomb, Endicott & Co.*, 203 Mich. 445, are not applicable. Nor is the case similar to *Dier* v.

*Voorhees,* 200 Mich. 510, where the plaintiff's decedent was upon the right side of the street, going with the traffic, and was run into by a runaway horse coming in the opposite direction. A case quite in point, however, is *Tracey* v. *Township of South Haven,* 132 Mich. 492, an action brought for injuries sustained by reason of a defect in the highway. It was there said by Mr. Justice CARPENTER, speaking for the court:

"Her testimony does not warrant the inference that she exercised any care whatever, either in watching the horse or observing the highway. While it is generally a question for the jury, and not for the court, as to what care should be exercised, this court is bound to say that no care is not due or reasonable care. (Citing cases.) * * * In this case the defect was not known to plaintiff, but it was open to her observation, had she paid any heed to her surroundings. It is urged that this court should not declare a rule which requires the driver of a vehicle to keep his eye constantly on the roadbed in front of his horse, or which will prevent his enjoying, to some extent, the beauty of the surrounding scenery. This opinion declares no such rule. It simply recognizes that, under the circumstances of this case, plaintiff was under an obligation to use some care. Her testimony fails to show that she used it, and presents no excuse for such failure."

While it is true that greater care is required where one is going into a place of known danger like a railroad crossing than when traveling elsewhere upon a public highway, still some degree of care is required in the latter instance. The day of the accident was bright, it was before sundown, plaintiff had his car under control, was going but three or four miles an hour, could have stopped within the length of his car, his eyesight was good, the obstruction was in plain view. The slightest glance by plaintiff to the roadbed ahead of him would have revealed the gasoline engine and avoided the accident. The bridge was a temporary affair as was the highway traveled by plaintiff;

the work of constructing the new bridge was in progress; all to the knowledge of plaintiff. As in the Tracey Case the plaintiff did not exercise due and reasonable care; he exercised no care. His want of care, his own negligence, contributed to the accident and defeated his right of recovery. See *Zoltovski* v. *Gzella,* 159 Mich. 620 (26 L. R. A. [N. S.] 435, 134 Am. St. Rep. 752); *Gibbs* v. *Dayton,* 166 Mich. 263; *Tolmie* v. *Woodward Taxicab Co.,* 178 Mich. 426; *Ude* v. *Fuller,* 187 Mich. 483; *Hill* v. *Lappley,* 199 Mich. 369; *Fulton* v. *Mohr,* 200 Mich. 538.

The judgment must be reversed without a new trial.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.