## LONG *v.* GARNEAU.

1. AUTOMOBILES—PEDESTRIANS—RIGHT OF WAY—ORDINANCES.

   Southbound motorist who made left turn after traffic light had changed so as to permit her to do so but who failed to yield right of way to pedestrian who had started south across east crosswalk of intersecting street was properly found guilty of negligence in view of city traffic ordinance according pedestrian the right of way under such circumstances (Lansing Traffic Ordinance, §§ 11[a], 18).

2. SAME—CHANGE OF TRAFFIC LIGHT.

   The change of a traffic light while a pedestrian is crossing a street does not authorize a motorist to continue his course regardless of circumstances open to view.

3. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE.

   A pedestrian may be guilty of contributory negligence if she fails to take the precautions that the law expects an ordinarily prudent person to take for own protection and safety while crossing a street upon which there is vehicular traffic.

4. SAME—ORDINANCES—PEDESTRIANS—RIGHT OF WAY—CONTRIBUTORY NEGLIGENCE.

   An ordinance giving the pedestrian the right of way is not a guarantee that she may cross a street intersection, even with the green light, without looking to the right or to the left, walk into the side of a passing automobile plainly to be seen if the pedestrian had looked, and not be guilty of contributory negligence (Lansing Traffic Ordinance, §§ 11[a], 18).

5. SAME—PEDESTRIANS—CHANGE OF TRAFFIC LIGHT—CONTRIBUTORY NEGLIGENCE.

   Pedestrian who started south across east crosswalk with traffic light in her favor, who continued on across street after light had changed without making any observations of approaching eastbound traffic including defendant's car which had made a

---

Standard of conduct defined, see 2 Restatement, Torts, §§ 283–285; proximate cause, contributory negligence, and ascertainment of fault, see §§ 430–432, 434, 462–466.

left turn at speed of 10 miles per hour and into the left side of which pedestrian walked, was properly found guilty of contributory negligence by trial judge sitting without a jury.

6. NEGLIGENCE—PEDESTRIAN'S DUTY OF OBSERVATION BEFORE AND WHILE CROSSING A STREET.

Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 9, 1947. (Docket No. 49, Calendar No. 43,782.) Decided December 3, 1947.

Case by Ella Long against Evelyn Garneau for personal injuries sustained in an accident. Judgment for defendant. Plaintiff appeals. Affirmed.

*Benjamin F. Watson,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin (Edward D. Wells, of counsel),* for defendant.

BOYLES, J. This is a suit by a pedestrian to recover personal injury damages from the owner-driver of an automobile as the result of a street intersection accident in Lansing. The case was heard without a jury by Judge Hayden of the Ingham county circuit court who held that the plaintiff was guilty of contributory negligence barring recovery, and from the judgment of no cause of action the plaintiff appeals.

The plaintiff, the defendant, and a disinterested witness who observed the accident, were sworn and testified. From their testimony the material facts may be summarized as follows:

The accident occurred about 10 o'clock at night, March 5, 1945, at the intersection of Washington

avenue and Kalamazoo street in the city of Lansing. It had been raining, the night was misty but visibility was good. The plaintiff, an elderly woman, after having attended a theater performance, proceeded to walk home, going south on the east sidewalk of Washington avenue. She stopped as she reached the intersection at Kalamazoo street. At this point Washington avenue, a main, well-traveled north and south street in said city, is about 77 feet in width from curb to curb, and Kalamazoo street, also a well-traveled street crossing Washington avenue east and west at right angles, is 45 feet wide between curbs. There are four traffic-light signals at this intersection—one on a post at each corner of the intersection.

As plaintiff stopped at the northeast corner of the intersection, the traffic signals showed green for north and south traffic, thus indicating that plaintiff had the right of way to cross Kalamazoo street. She started to do so, after observing that no automobile traffic was approaching either from the east or west on Kalamazoo street. She walked rapidly, maintained a straight course south, crossing Kalamazoo street. She looked neither to the right nor to the left after she started across. She testified that her eyesight was good, that visibility was good, that nothing interfered with her view. She testified:

"*Q.* And as I understand it, when you stepped off the curb you say you had the green light?

"*A.* I did.

"*Q.* And by that you mean that the light was green for traffic going north and south on Washington?

"*A.* Yes; yes, the traffic, it would be green with me; the traffic would be going north and south on Washington.

"*Q.* Yes.

"*A.* And I had the right of way; that's right.

"*Q.* Now, did you continue to watch the light as you proceeded across Kalamazoo, or did you take your attention away from the light?

"*A.* Well, I will have to answer that question in my own words; can I?

"*Q.* Yes.

"*A.* I stopped right on the corner and looked right at the light and it flickered green, and I went a-walking right straight across to the corner of Arbaugh's, and I don't know as I thought about the light again; in my own mind I was thinking about my daughter, and I was positive I had my right of way, see.

"*Q.* Yes. Now, you say you were not thinking about the light any more?

"*A.* No. I could cross the street.

"*Q.* You were thinking about your daughter?

"*A.* Yes. I can cross the street while the light is green. I can almost do it now.

"*Q.* But your mind, as you were walking across that street, you remember, was thinking about your daughter?

"*A.* Yes. * * *

"*Q.* Well, at any rate, coming back to the question I asked you, Mrs. Long, after you stepped off the curb to start across Kalamazoo, did you pay any more attention to the light, to the traffic light?

"*A.* Well, I can't say that I truthfully did.

"*Q.* All right. That is what we want is the truth. So you would say to be truthful about it that you won't say that you looked at the light any longer, did you?

"*A.* No, because I didn't had to, see, in my own mind.

"*Q.* What you did was look straight ahead of you towards Arbaugh's store?

"*A.* Yes, that is exactly right.

"*Q.* And you didn't look to your right, did you?

"*A.* No.

"*Q.* After you stepped off the curb you continued straight ahead looking straight ahead, didn't you, at all times?

"*A.* That is exactly what I done.

"*Q.* And you didn't see any car approaching from your right at any time, did you?

"*A.* No, I didn't. I never did see that car.

"*Q.* You never saw that car before it collided with you, did you?

"*A.* No, I didn't.

"*Q.* And the first thing you knew there was an accident, did you not?

"*A.* That's right.

"*Q.* Now, it is a fact, is it not, that when the actual collision occurred you had passed the center of Kalamazoo street?

"*A.* Yes, I had. Undoubtedly I had gotten past the center of the street.

"*Q.* In other words, you had crossed—from the time you left the curb, if that street is 45 feet wide, you had crossed a distance of 22 feet before you got to the center of the street, hadn't you?  *  *  *

"*A.* Yes. I had crossed some little distance south of the center of Kalamazoo street when the accident happened. The car would have to be on its own righthand side of the street. I wouldn't say it was on the wrong side.

"*Q.* And you really don't know where the car came from, do you, of your own knowledge?

"*A.* No.

"*Q.* Because you never saw it?

"*A.* I didn't see it.

"*Q.* And the reason you didn't see it is because you didn't look in that direction, did you?

"*A.* Well, I thought I was safe; I didn't have to.  *  *  *

"*Q.* All right. Did you look to your left; that would be down Kalamazoo street?

"*A.* No.

"*Q.* As you proceeded across?

"*A.* No, I didn't.

"*Q.* You didn't look either to the right or left, did you?

"*A.* No.

"*Q.* You merely looked ahead?

"*A.* Just as I walked up to the corner the light changed; I went on walking right across the street.

"*Q.* And you relied entirely upon the fact that you had started with the green light and that you could walk across?

"*A.* That's what I did."

A disinterested witness testified that he saw the plaintiff step off the curb and proceed south on Washington avenue, that the traffic light was then green in her favor, and that the light turned amber when plaintiff was about seven feet into Kalamazoo street. He testified:

"*A.* When the light turned amber she was about seven feet (into the street) south of the north curb line. The defendant's car was about at the middle of Washington avenue and Kalamazoo street, making a slow, lefthand turn to go east. I was looking that way for traffic to clear for myself. I could see Mrs. Long and the car.

"*Q.* And tell us what happened from then on?

"*A.* Well, Mrs. Long put her arm up to her head; it was kind of a mist, kind of a nasty night. * * *

"*Q.* Well, tell us what she did.

"*A.* And she proceeded on a gait a little faster than a walk. * * *

"*Q.* Just tell us what she did and how she proceeded.

"*A.* And I realized that the car being in front of her, that she was going to run into the side of it, and I immediately got out of my car and just started over there.

"*Q.* Did she come in contact with the car?

"*A.* She did.

"*Q.* And just tell the court how she came in contact with the car?

"*A.* Well, in her proceeding south, the car going east, as she ran into the side of the car, right at the door post, the front door post, and right at the window.

"*Q.* On which side of the car?

"*A.* She was on the left side of the car, on the north side of the car then.

"*Q.* And you say the door post; you mean the door post near where the windshield is?

"*A.* Yes, sir.

"*Q.* Did the car run into her, or whether or not she ran into the side of the car?

"*A.* She ran into the side of the car.   *   *   *

"*Q.* Now, could you see the car at all times from the time that she was in a position 7 or 8 feet south of the north curb; could you see the car at all times that she was proceeding across there?

"*A.* Yes, I could.

"*Q.* Was that car in plain sight all that time?

"*A.* Yes, sir.

"*Q.* And did you keep your attention on both the car and this woman?

"*A.* Well, I kept my attention mostly on this woman, because I noticed this car turning, and I watched her to see if she was going to stop, and she didn't, so that kind of attracted my attention more.

"*Q.* Well, now, I would like to ask you this: About how fast was the car traveling from the time that you observed it until the time of the collision?

"*A.* Well, I would judge not over 10 miles, if it was doing that.

"*Q.* Did it have its lights on?

"*A.* Yes.

"*Q.* Now, tell the court, if you will, what kind of a turn she made there? On what side of Wash-

ington, or Kalamazoo was she proceeding from the time she made the turn until the time of the collision?

"*A.* Well, she was over to the west side of Washington and turned to the south side of Kalamazoo.

"*Q.* Did she cut the corner across here (indicating), or whether or not she made the ordinary and usual turn?

"*A.* I would think she made an ordinary usual turn.

"*Q.* And from the time that she crossed the center, what would be the center of Washington street, was she traveling on the south side of Kalamazoo?

"*A.* She was."

The defendant testified that she was driving south on Washington avenue, that when she entered the intersection at Kalamazoo street the light was green, that as she was at the center of the intersection to turn left on Kalamazoo street the amber light came on, that she waited for an approaching automobile to turn west into Kalamazoo street at the intersection, then proceeded to turn east on Kalamazoo street, that she did not cut the corner but went around the center of the intersection, driving 8 to 10 miles an hour, and that she did not see any pedestrian on the crosswalk. Concerning the accident, she testified:

"*A.* Well, the first thing that I saw was the shadow on the window beside of me and an arm, and this lady, Mrs. Long, had a white bandana which did show up in the light, and it hit right on the window beside of where I was driving.

"*Q.* And that would be which window?

"*A.* It would be on the lefthand side of the car.

"*Q.* The window in the door immediately back of the windshield?

"*A.* Yes.

"*Q.* Had you seen her before that?
"*A.* I had not."

After the collision defendant's automobile traveled approximately 8 feet, and when stopped the plaintiff was lying beside the left rear wheel of the automobile. From her position there can be no doubt but that the plaintiff walked into the side of defendant's automobile. It is equally obvious that if plaintiff had looked to the right before taking her last few steps south of the center line of Kalamazoo street, she could have seen the defendant's automobile before walking into its side. It was plainly there to be seen.

The circuit judge admitted having some difficulty in determining whether the defendant was guilty of negligence. However, the defendant herself admitted that she did not see the plaintiff crossing the street, notwithstanding the fact that plaintiff was plainly there to be seen had the defendant maintained a proper observation. Furthermore, under the provisions of a traffic ordinance of the city, the plaintiff had the right of way to cross Kalamazoo street with the green light in her favor, and it was the duty of the defendant to look to see whether a pedestrian was crossing Kalamazoo street within the intersection. If so, it was the duty of the defendant to yield the right of way to the pedestrian. The traffic ordinance of the city provides:

"Sec. 11(a):
"Green alone or 'Go.' Vehicular traffic facing the signal, may proceed straight through or turn right or left unless a sign at such place prohibits either such [*sic*] term (turn): *Provided,* That vehicular traffic shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited. Pedestrians

facing the signal may proceed across the highway within any marked or unmarked crosswalk.''

''Sec. 18 (Par. 2):

''A pedestrian starting across in any such crosswalk on a green or 'go' signal, traffic control device or signal of a police officer, shall have the right-of-way over all vehicles, including those making turns, until such pedestrian has reached the opposite curb. It shall be unlawful for the operator of any vehicle to fail to yield the right-of-way to any pedestrian who is crossing a street as herein permitted.''

The trial judge before reaching the question of plaintiff's contributory negligence, must have found that the defendant was guilty of negligence which was a proximate cause of the accident, otherwise the case would have gone against the plaintiff for failure to prove such negligence on the part of the defendant. The court was justified in finding the defendant guilty of negligence for failure to maintain a proper observation, before turning east, to ascertain whether a pedestrian was crossing Kalamazoo street, whereby the defendant violated the provisions of the traffic ordinance of the city. We agree that the defendant was guilty of negligence, a proximate cause of the accident. See *Werker* v. *McGrain,* 315 Mich. 287; *Heiman* v. *Kolle,* 317 Mich. 548.

The trial court further concluded that the plaintiff was guilty of contributory negligence and that this barred her right to recover damages. We need not rely on the rule of law often stated here, that where a law case is heard by the court without a jury, we do not reverse unless the evidence clearly preponderates in the opposite direction. It is apparent, from the undisputed facts, that the plaintiff was guilty of contributory negligence, notwithstanding the fact that she had the right of way to cross

by reason of the green light in her favor. Admittedly the plaintiff looked neither to the right nor to the left after she started to cross the intersection, nor did she look to see that the green light had changed, as it did before she reached the center line of Kalamazoo street. She relied solely on the fact that under the ordinance she had the right of way. Counsel for the plaintiff takes the same position, insisting that the two sections of the traffic ordinance hereinbefore quoted "guarantee the plaintiff and appellant, Ella Long, a safe passage, from north to south on the east side of Washington avenue, across Kalamazoo street, that being an intersection controlled by traffic lights, she having commenced her crossing with the green or 'go' signal."

It is quite correct to say, as we recently held in *Heiman* v. *Kolle* (syllabus), *supra*:

"The change of a traffic light while a pedestrian is crossing a street does not authorize a motorist to continue his course regardless of circumstances open to view."

However, this goes only to the question of the negligence of the defendant-motorist. But the pedestrian may be guilty of contributory negligence if he fails to take the precautions that the law expects an ordinarily prudent person to take for his own protection and safety. An ordinance giving the pedestrian the right of way is not a "guarantee" that a pedestrian may cross a street intersection, even with the green light, without looking to the right or to the left, walk into the side of a passing automobile plainly to be seen if the pedestrian had looked, and then avoid the conclusion that he is guilty of contributory negligence.

In *Huber* v. *Paquette*, 293 Mich. 370, the plaintiff relied both on a city ordinance (Saginaw ordinance No. B-325, § 10[a]) and a State statute (1 Comp. Laws 1929, § 4712 [Stat. Ann. § 9.1580]), giving plaintiff the right of way at a street intersection, by the terms of which the defendant was required to yield the right of way to the plaintiff. In reversing a judgment for the plaintiff, this Court said (p. 372):

"The ordinance and the statute grant no fixed rights regardless of existing circumstances. Persons are required to exercise reasonable care to save themselves from injury by reason of apparent negligence of another."

In *Steele* v. *Hamilton*, 218 Mich. 522, the plaintiff-pedestrian stopped at the curb on reaching the street intersection, observed that the signal was in her favor, started to cross and walked into the side of an automobile plainly in sight. This Court said that under our view of the case it would be necessary to discuss only the question of contributory negligence. A disinterested witness testified that the plaintiff was struck by that part of the automobile "where the fender joins the running board." We said (p. 524):

"It is exceedingly difficult to read the record evidence of this accident and avoid the conclusion that plaintiff was unmindful of her surroundings and ran into the automobile. It is obvious that the car occupied that part of the street immediately in front of her before she did, and had she been making the use of her eyes that most people do when traveling in a busy section of the city, she would have seen the car in season to have stopped before it struck her. * * * There is some conflict in the testimony as to whether the semaphore was turned against the east and west traffic, but if we concede that it was, that fact did not wholly relieve plaintiff

of exercising ordinary care and using her eyes in the ordinary way to protect herself from collisions. We are of the opinion that the evidence, as it appears in the record, was such that the trial court should have directed a verdict for the defendant on the ground that plaintiff herself was guilty of negligence, as a matter of law.''

''In pedestrian's action against motorist for injuries received at street intersection when plaintiff, southbound on east crosswalk, had reached about the center of the street at time traffic light changed against her and defendant came from west, instruction that pedestrian who started across street under protection of traffic light would have the right to continue uninterruptedly even though the light did change while she was crossing the street but which wholly ignored plaintiff's own testimony showing total want of care on her part in failing to observe defendant approach before starting to cross the street was erroneous.

''Pedestrians starting to cross a street under protection of a traffic light are still required to observe the change, if any, removing the protection and to employ reasonable care in proceeding into the path of released traffic and the drivers of released traffic must observe pedestrians caught by change of light and exercise reasonable care to avoid striking them. * * *

''Pedestrian who started south across east crosswalk with traffic light in her favor, who continued on across street after light had changed to favor east- and westbound traffic without making any observations of approaching eastbound traffic including defendant's car was guilty of contributory negligence as a matter of law.'' *Sloan* v. *Ambrose* (syllabi), 300 Mich. 188.

In *Molda* v. *Clark*, 236 Mich. 277, the plaintiff-pedestrian was struck and injured by an automobile at the intersection of Washington avenue and Michi-

gan avenue in Lansing. The accident occurred in the evening, pavements were wet, visibility was good. Plaintiff, with the green light, was crossing Washington avenue toward the east, from the southwest corner of the intersection, and the defendant-motorist was driving north on Washington avenue, about to make a turn east into Michigan avenue at the intersection. Plaintiff passed a standing automobile, into the path of the defendants' automobile making the turn. In reversing a judgment for the plaintiff, without a new trial, the Court said (p. 278):

"When plaintiff passed the standing automobile defendants' moving car was within a few feet of her. She testified of looking and of not seeing the approaching car. Plaintiff had verdict and judgment. Defendants bring error.

"The rights of the parties to use the street were mutual and co-ordinate. Neither had superior rights. Assuming negligence of defendants, plaintiff was guilty of contributory negligence as a matter of law. That she testified of looking and seeing nothing is of no avail when the physical facts demonstrate that, had she looked, using ordinary care, she could and must have seen defendants' approaching car, and had she so looked, and so used ordinary care, she could have avoided injury. *Jones* v. *Armstrong,* 231 Mich. 637; *Molby* v. *Railway,* 221 Mich. 419."

In *DeJager* v. *Vandenberg,* 288 Mich. 136 (6 N. C. C. A. [N. S.] 341), the plaintiff-pedestrian started across the street intersection with the green light, when he reached the center the light changed, but without looking again he proceeded rapidly across and walked into the side of an automobile he did not see. Upon trial by jury the plaintiff had verdict and judgment which was reversed on appeal without a new trial. The Court said (pp. 137—139):

"Plaintiff's own testimony established his contributory negligence as a matter of law. He walked into the side of defendants' passing automobile.
*   *   *

"He did not see defendants' car until the front of it passed by him and then his momentum carried him against the side thereof near the double doors. He knew the light had changed and he was in the pathway of vehicles, but took no care. Defendants' car did not run him down; he heedlessly walked against the car.

"Counsel for plaintiff contend that with the Allen car standing at the intersection just south of the center line of the street it was a violation of a city ordinance (article 3, §§ 4, 9, 12, 15; article 7, §§ 2, 4) and State law (1 Comp. Laws 1929, § 4706 [Stat. Ann. § 9.1574]) for defendants' car to come to and cross the intersection abreast of and to the right of the Allen car, though on the proper side of the street, and therefore the question of plaintiff's contributory negligence was an issue of fact for the jury.

"If defendants were violating the law and thereby were guilty of negligence, that did not send plaintiff's contributory negligence to the jury under his own testimony of total want of care.

"Plaintiff looked when he could not see and did not look when he could have seen. The slightest care on his part would have saved him from walking against defendants' automobile. If defendants were guilty of negligence, plaintiff was guilty of contributory negligence, as a matter of law."

"Requested instruction, that presumption obtained that plaintiff's decedent, a pedestrian about 79 years of age, thought he had time to reach a safety zone just across double streetcar tracks in middle of street where he left curb with traffic light in his favor, was properly refused as inappropriate where testimony showed deceased proceeded to cross with his head down and without looking toward released traffic and that light changed before he reached

streetcar tracks and he. could have remained out of way of either vehicular traffic or defendant's streetcar." *Beaulieu* v. *City of Detroit* (syllabus), 293 Mich.. 364.

The rule that a pedestrian, although having the right to cross the intersection by having the green light, still may be guilty of contributory negligence by failing to look and see an approaching automobile is in full accord with the like rule of law applying to the driver of an automobile approaching an intersection with the right of way. Indicative of many intersection collision cases so holding are the following:

"That driver of automobile on right has right of way at street intersections under Act No. 318, Pub. Acts 1927, § 20,* is not an assurance of safety nor an absolute right in all conditions, but both drivers must use due care.

"Automobile driver approaching intersection, who neglected to look to left, and therefore failed to see approaching automobile with which collision was inevitable unless he took measures to avoid it, is guilty of contributory negligence as matter of law, notwithstanding he had right of way, since it was his duty to look, and, failing to do so, he is chargeable with having seen what he should have seen." *Kerr* v. *Hayes* (syllabi), 250 Mich. 19.

"Statutory right of way does not authorize motorist, in approaching a highway crossing, to assume that in all events he may proceed without looking or, if unable to see, without exercising precaution commensurate with reasonable prudence (1 Comp. Laws 1929, § 4712).

"Statutory right of way provided to motorist at right is not an assurance of safety nor an absolute right under all conditions as both parties must use

---

* See 1 Comp. Laws 1929, § 4712 (Stat. Ann. § 9.1580).—REPORTER.

due care and driver on the right cannot continue to assume one on the left will accord right of way when circumstances would indicate the contrary to a reasonable person (1 Comp. Laws 1929, § 4712).

"Party having statutory right of way at an intersection still has duty to exercise reasonable care for his own safety (1 Comp. Laws 1929, § 4712).

"One must exercise due care when attempting to cross streets and intersections whether on foot or driving an automobile." *Block* v. *Peterson* (syllabi), 284 Mich. 88.

In *Moore* v. *Noorthoek,* 280 Mich. 431, the factual situation was in many respects quite like the case at bar. The plaintiff, a woman of mature years, attempted to cross Plainfield avenue in Grand Rapids about 8 o'clock at night in the month of March. The weather was clear, visibility good, the intersection was lighted, there were no obstructions to the view of either the plaintiff-pedestrian or the defendant-driver of the automobile. A city ordinance required the driver of the automobile to yield the right of way to a pedestrian crossing the street at the intersection. However, unlike the case at bar, when the plaintiff reached the center of the street she looked and observed the defendants' approaching automobile about 160 feet away, then proceeded on the way across, made a third observation when halfway across the other side of the street, saw the automobile approaching at a rate of speed in excess of statutory and ordinance limits, made a dash to get across and was struck. The Court, after discussing other pedestrian street intersection accident cases, said (p. 438):

"The case at bar is to be distinguished from *Richardson* v. *Williams,* 249 Mich. 350; *Neeb* v. *Jacobson,* 245 Mich. 678; and *Tolmie* v. *Woodward Taxicab Co.,* 178 Mich. 426. In these cases the rule

is settled that a pedestrian who looks but fails to see a car which is plainly in view cannot recover. The instant case is also to be distinguished from the recognized rule of law that where a person goes into a known place of danger and fails to look and is struck by a car that he would have seen had he looked, he cannot recover. See *Dier* v. *Voorhees,* 200 Mich. 510; *Tolmie* v. *Woodward Taxicab Co., supra.*

"In the case at bar the evidence shows that defendants' car was 164 feet away when plaintiff started to cross the west half of the intersection, a distance of 21 feet. She had a right to assume that defendant would drive the car in compliance with the city ordinance which gave plaintiff the right of way at such crossings and whether plaintiff exercised reasonable care under the circumstances was a question of fact for the jury."

In connection with the above case, it should be remembered that in the case at bar the trial court, hearing the case without a jury, and in an opinion reviewing fully the testimony in the case, held that the plaintiff was guilty of contributory negligence under the facts in the case.

In *Guina* v. *Harrod,* 275 Mich. 393, relied upon here by the appellant for reversal, the plaintiff-pedestrian crossing at a street intersection could not see the defendant's approaching automobile passing another vehicle on the right in violation of a city ordinance. The trial court, hearing the case without a jury, held that the facts did not indicate that the plaintiff was negligent in failing to see the defendant's automobile. On the facts, the case is clearly distinguishable from the situation here before us.

"While a person has a right to cross a highway and use it equally with operators of vehicles, he is not excused from the duty of exercising reasonable care to see where he is going.

"Eighteen-year-old passenger of westbound truck which was stopped on north part of 18-foot pavement at 6:30 p.m., late in June, about 30 or 40 rods east of a rise in the road which obscured the view of eastbound traffic until the crest of the hill was reached, who alighted on north side of truck and passed to the rear and started to cross the south half of the road and was hit at edge of pavement or near same on shoulder of road by eastbound car traveling at speed of 45 to 50 miles an hour without having seen defendants' car approaching was guilty of contributory negligence as a matter of law." *Beers* v. *Arnot* (syllabi), 308 Mich. 604.

"Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances." *Malone* v. *Vining* (syllabus), 313 Mich. 315.

In the case at bar the appellant relies solely on the ordinance which declares that she had the right of way and that the defendant must yield it to her. While the defendant was guilty of negligence, this does not absolve the pedestrian from looking while crossing the street, which is what any ordinarily prudent person should do when crossing the street at a busy intersection. Maintaining one's right of way in the face of obvious danger, even though allowed by statute or ordinance to that effect, may be temporarily satisfying, but may ultimately result in disaster.

Judgment affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.