## STINSON v. PAYNE.

1. EVIDENCE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE — VIOLATION OF ORDINANCE.

In an action for personal injuries caused by plaintiff's bicycle colliding with defendant's automobile, driven by his daughter, testimony that plaintiff was riding after dark without a light in violation of an ordinance, that he had previously so ridden, and that, after the installation of a boulevard lighting system on the streets, such ordinance was not enforced, was admissible as bearing on the question of plaintiff's contributory negligence.[1]

2. SAME—EXPRESSIONS OF PAIN—SIMULATION.

Testimony as to plaintiff's expressions indicating pain and nervousness about a month after the accident was admissible in evidence, where such manifestations were natural expressions of present suffering and not made under conditions calculated to induce plaintiff to simulate for the purpose of affecting his claims for damages.[2] WIEST, J., dissenting.

3. SAME—CONCLUSIONS—STRIKING TESTIMONY.

Testimony that the driver of the automobile "stopped the car as soon as she could" was properly stricken as invading the province of the jury.[3]

Error to Shiawassee; Collins (Joseph H.), J. Submitted January 20, 1925. (Docket No. 89.) Decided May 14, 1925.

Case by Ray Stinson against William E. Payne for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Pulver & Bush,* for appellant.

*Frank H. Dusenbury* and *George E. Pardee,* for appellee.

[1]Motor Vehicles, 28 Cyc. p. 47 (Anno); [2]Evidence, 22 C. J. § 267; [3]Id., 22 C. J. § 600.

On duty of bicyclists to carry lights, see note in 47 L. R. A. 295.

BIRD, J.   In the early evening, but after dark, plaintiff was riding his bicycle without a light in a westerly direction on West Main street in the city of Owosso.   While he was passing the intersection of West Main street and Shiawassee he collided with defendant's automobile, which was being driven by Josephine Payne, his 15-year old daughter.   The automobile was being driven in an easterly direction on West Main street, and intended to, and did, turn to the left on Shiawassee street.   It is the claim of plaintiff that the collision occurred by reason of the automobile "cutting the corner."   As a result of the collision plaintiff claims he was thrown from his bicycle and severely injured.   He recovered a judgment and defendant assigns error.

1. Defendant complains of the admission of the following testimony:

"*Q.* After the establishment of the boulevard lighting system what was the custom of riding bicycles on the streets lighted by the boulevard system here in Owosso?   (Objected to.   Overruled.)

"*A.* Why, it has never been in force to my knowledge.   (Stricken out.)

"*A.* They do ride bicycles on the streets.   (Objected to.)

"*Q.* I am talking about a bicycle being driven on the streets lighted by the boulevard system, without a light on the bicycle?   (Objected to.   Overruled.)

"*A.* They ride on the streets without lights; yes, sir.

"*Q.* Was that the custom?

"*A.* Yes, sir."

This testimony was admitted after the following testimony was drawn from plaintiff on cross-examination:

"*Q.* Had it been your custom to sometimes ride your bicycle under similar circumstances.   Had you ridden it before that fall?

"*A.* Yes, sir.

"*Q.* Had it been your custom to sometimes ride your bicycle under similar circumstances that you had

ridden it that fall, you ride home with your bicycle after dark without a light on, and of course, it was your intention that evening to ride that evening without a light on? (Objected to. Objection overruled and witness continues):

"*Q.* To ride home with your bicycle after dark?

"*A.* Yes, sir.

"*Q.* Without a light on it?

"*A.* Yes, sir."

Plaintiff argues that the testimony objected to was admissible because of the testimony on the same subject previously drawn from plaintiff on his cross-examination. There may be some doubt whether its admission can be supported on this ground. Defendant's counsel had the right to show on the cross-examination of plaintiff that he violated the ordinance on the night in question, and had habitually violated the ordinance requiring a light on his bicycle as bearing on his contributory negligence on the evening of the accident. Testimony showing that plaintiff violated the ordinance was evidence of his negligence. *Cook* v. *Johnston,* 58 Mich. 437 (55 Am. Rep. 703); *Westover* v. *Railway Co.,* 180 Mich. 373. After this testimony was admitted we think the testimony complained of was also admissible as bearing on the contributory negligence of plaintiff. If the ordinance were not enforced after conditions had changed and the business street was fully lighted, it would have some bearing on the conduct of plaintiff in proceeding without a light, although it would probably not wholly excuse his failure to observe it. We think no error was committed in admitting both bits of testimony quoted.

2. It was the claim of plaintiff that he was severely injured. This was denied by defendant, and the claim made that plaintiff was malingering. Testimony bearing on the physical condition of plaintiff, about a month after the accident and before suit was brought,

was shown by plaintiff's brother, who resided at Mt. Pleasant:

"*Q.* What was his condition as to being able to move about, walk, or get about?

"*A.* He could walk on crutches very slow.  *  *  *

"*Q.* How did he get from the depot up to your house on that occasion?

"*A.* I went up onto the—the train, helped him off, helped him on my car and from the car.

"*Q.* Let me ask you, did he walk off rapidly or. quickly, or slowly or with some hesitation, or how was he?  *  *  *

"*A.* He walked very slowly on his crutches.  I also assisted him, too.

"*Q.* Describe the assistance that was given to him in attempting to move about, walk around?  *  *  *

"*A.* When he went to move around I helped him.

"*Q.* When you got him up to your house, how did he get out of the automobile and get into your house?  *  *  *

"*A.* I helped him.

"*Q.* How long after he had been to your place was it before you did get a doctor, if you did get one?  *  *  *

"*A.* I saw a doctor that day, but the doctor did not see him that day.

"*Q.* Did you get a prescription or medicine from him?

"*A.* I went and called the doctor in, he appeared.  *  *  *

"*Q.* I am trying to find out when it was you got the doctor to act professionally for your brother, if you did do that?  Did you do that or did you not?

"*A.* I did; yes, sir.  *  *  *  The doctor examined him.  *  *  *  He gave some quieting medicine to him.  *  *  *  I think the doctor saw him not over three or four times, but I saw him myself more than that.  When I saw him I got medicine for him.  *  *  *

"*Q.* When he was up in Mt. Pleasant, what was there about his physical condition that you noticed different from what you had seen and observed in him before the time of his injuries?

"*A.* Well, he was a nervous wreck.    (Stricken out.)

"*Q.* What demonstrations or emotions on his part did you observe representing his then existing physical condition?    The court said you could answer it.

"*The Court:* Proceed.    You may answer.

"*A.* Well, when anyone came to see him he would break right down and cry, he would cry.

"*Q.* He would break down and cry?

"*A.* Yes, sir; when anyone came around here at all, or if I would say anything to him sympathetically or anything like that, he would break down and cry.    I never saw that condition existing before the injury in question.    Nights he groaned nearly all night.

"*Q.* What did you do to relieve his then condition, if anything?

"*A.* I gave him quieting medicine.

"*Q.* From whom was the medicine obtained?

"*A.* Dr. Pullen."

Repeated objections were made to this testimony as contravening the rule laid down by this court regarding the admission of medical and other testimony, showing the physical condition of the injured person.

The rule in the leading case of *Grand Rapids, etc., R. Co.* v. *Huntley,* 38 Mich. 537 (31 Am. Rep. 321), regarding such testimony, is:

"It is difficult to lay down any very clear line of admission or exclusion where the exclamation refers to the feelings of the moment.    But we think it would not be safe to receive such testimony in any case where it is not the natural and ordinary expression of pain, called out without purpose or in the course of medical treatment.    The unstudied expressions of daily life, or the statements on which a medical adviser is expected to act, and which, if feigned, he should have skill enough to subject to some test of truth, stand on a footing which removes them, in general, from suspicion.    But we cannot think it safe to receive such statements which are made for the very purpose of getting up testimony, and not under ordinary circumstances.    The physicians here were not called in to aid or give medical treatment.    The case had been relinquished long before, as requiring no further attendance.    They were sent for merely to enable the

plaintiff below to prove her case. The whole course of the plaintiff was taken to no other end. She had in her mind just what expressions her cause required. They were therefore made under a strong temptation to feign suffering, if dishonest, and a hardly less strong tendency, if honest, to imagine or exaggerate it. The purpose of the examination removed the ordinary safe-guards which furnish the only reason for receiving declarations which bear in a party's own favor."

Also in *Comstock* v. *Township of Georgetown,* 137 Mich. 541, it was held that expressions of pain, vocal or otherwise, made to physicians called by plaintiff not to give medical aid but to make up medical testimony, are inadmissible.

It does not appear to us that the testimony quoted infringes this rule. The exclamations of pain and the indication of weakened nervous force testified to were not manifested in the presence of a physician for the purpose of qualifying him to give testimony. The testimony quoted contains no statement by the plaintiff of his physical ills. These manifestations were made while on a visit to his brother's home and before suit was started. The manifestations do not appear to have been made under conditions which would induce plaintiff to simulate for the purpose of affecting his claim. The manifestations of pain and nervous weakness appear to have been natural expressions of present suffering and not voluntarily made for any ulterior purpose. We think they were admissible.

Elizabeth Young was riding with defendant's daughter when the collision occurred. She was a witness, and while describing how the accident occurred, she made the statement that "Josephine stopped the car as soon as she could." This was stricken out upon motion of counsel. We think the ruling was right. It was competent for the witness to state how soon Josephine stopped the car and what

she did in bringing it to a stop, but it was incompetent for her to state the conclusion that "Josephine stopped the car as soon as she could," as that was invading the province of the jury.

We have examined the remaining assignments but we find nothing which merits a reversal of the judgment.

The judgment is affirmed.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred with BIRD, J.

WIEST, J. (*dissenting*).    There was prejudicial error in permitting plaintiff to lay before the jury his manifestations evidencing claimed physical condition about a month after the accident.    The claimed weakness and crying of plaintiff could readily have been simulated.    The rule of exclusion prevents the piling up of evidence so easily fabricated.    The plaintiff and his physician had a right to lay before the jury the extent, nature and consequences of the injuries received, but plaintiff had no right to call others to establish his demonstrations of physical disability. The cases cited by my Brother condemn the practice here indulged.

In *Norris* v. *Railway*, 185 Mich. 264, the rule of exclusion was again stated.    To permit a plaintiff to show in his own behalf demonstrations and emotions self declaratory of physical condition a month after the accident, such as crying when anyone came around, or if any sympathy for him was expressed, would invite the manufacture of evidence.    Such demonstrations conveyed the same meaning as self-serving statements.    The rule of exclusion is not limited to manifestations in the presence of a physician but extends to laymen.

For this error the judgment should be reversed with costs to defendant.