## MALONE *v.* VINING.

1. AUTOMOBILES—PEDESTRIANS—NEGLIGENCE—QUESTION OF FACT.

   In pedestrian's action against eastbound motorist for injuries sustained when he was struck while crossing highway from north to south, defendant's testimony, together with other evidence and the physical facts and circumstances surrounding the accident, presented a question of fact for jury as to whether or not defendant was negligent.

2. NEGLIGENCE—PEDESTRIAN'S DUTY OF OBSERVATION BEFORE AND WHILE CROSSING A STREET.

   Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

3. AUTOMOBILES—PEDESTRIANS—CROSSING HIGHWAYS.

   While pedestrians upon the public highway have a right to assume in the first instance that motorists will use ordinary care for the protection of pedestrians, the latter must not rest content on such assumption if there comes a time when he knows, or ought to know by the exercise of reasonable care, he is being placed in danger.

4. SAME—PEDESTRIANS—BURDEN OF PROOF.

   A pedestrian plaintiff who was injured when struck by defendant motorist's car has the burden of showing defendant was negligent and own freedom from contributory negligence.

5. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

   Pedestrian construction company employee who was on north side of highway in a place of safety, who saw defendants'

---

Contributory negligence of plaintiff sufficient to bar recovery, see 2 Restatement, Torts, §§ 475, comment a, 476; causal relation between harm and negligence, § 465; contributory negligence as a matter of law, §§ 432, 463, comment b, 464, comment a, 466, comment g; standard of conduct to which plaintiff must conform, §§ 283–285.

eastbound car pass to north of his employer's back-filling machine some 50 feet west on south portion of pavement but who did not form a judgment as to the speed of plainly visible car or its distance from him before starting across highway and who had reached a place just south of center when struck by car was guilty of contributory negligence as a matter of law, hence defendant's motion for directed verdict should have been granted.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 9, 1945. (Docket No. 65, Calendar No. 43,176.) Decided January 7, 1946.

Case by Fred Malone against Horace Vining and wife for damages for personal injuries sustained when he was struck by automobile driven by defendant wife. Verdict and judgment for plaintiff. Defendants appeal. Reversed without new trial.

*Alexander, McCaslin, Cholette & Buchanan,* for plaintiff.

*Stewart Ricard,* for defendant.

STARR, J. Defendants appeal from a judgment of $5,160.70 entered on jury verdict for plaintiff.

On May 12, 1942, at about 7 o'clock in the morning, defendant Frances Vining was driving an automobile owned by her husband defendant Horace Vining east on Nine Mile road in Macomb county. This is a paved highway 18 to 20 feet wide, running east and west, and is intersected by Mound road which runs north and south. A construction company was laying pipe along the south side of Nine Mile road east of Mound road. Its back-filler machine was standing on the south half of the pavement a short distance east of Mound road. About 50 feet further east the company's pull-shovel machine was standing off the pavement on the south shoulder

of the road. It was necessary for east-bound traffic to turn onto the north side of the pavement in order to pass the back-filler machine. There was a sign, "slow—men working," on the pavement west of the back filler, and a construction company employee was directing eastbound traffic to the north side of the pavement. As defendant driver passed the intersection of Mound road and approached the back filler, she observed the "slow" sign and was directed to turn on to the north (wrong) side of the highway. She made the turn and proceeded on the north side at a speed of about five miles an hour until she had passed the back filler. She then turned back to the south (right) side of the pavement, and as she was completing the turn, her car struck and severely injured plaintiff, an employee of the construction company, who was walking or running from the north to the south side of the highway. The left front fender of her car struck him when he was about two or three feet south of the center line of the highway.

Plaintiff began the present suit to recover his damages resulting from the accident, alleging negligence on the part of defendant driver. Defendants answered, denying the charge of negligence and alleging that plaintiff was guilty of contributory negligence. Defendants' motion for a directed verdict was denied, and the case was submitted to the jury, which returned a verdict of $5,160.70 on which judgment was entered. Defendants' motions for a judgment in their favor and for a new trial were denied, and they appeal.

Defendant driver, who was called by plaintiff for cross-examination under the statute (3 Comp. Laws 1929, § 14220 [Stat. Ann. § 27.915]), testified in part as follows:

"I noticed some construction work on the south side of Nine Mile road. There were two machines, a

large one on the south half of Nine Mile road and a smaller one that set to the side of the road.    *    *    *

"As I proceeded east and approached the 'slow' sign, it was necessary for me to go on the north side of the pavement until I passed the back filler.    *    *    *

"Then I turned right to get on the south side of the pavement.    *    *    *

"At the time of this accident, I was straightening my front wheels, just making the curve. Both of my front wheels were on the south side.    *    *    *

"I saw Mr. Malone before the accident. When I first saw him, he crossed the street. He went from the south side to the north side.    *    *    *    After reaching the north edge of the pavement, he stood still.    *    *    *

"Q.  Where did you next see him?    *    *    *

"A.  Well, he turned. He was standing there and he called to (other workmen) across the street and I thought they would be coming in front of the back filler and tooted the horn. I looked to the right.

"Q.  You looked down to the right, that is, down toward the machine?"

"A.  Yes.    *    *    *

"Then the next I saw Mr. Malone, he was running and ran right in front of my machine.

"Q.  Did he come back right straight across where he was?

"A.  No, he was on an angle.    *    *    *

"Q.  Did you see him leave the north shoulder?

"A.  No, I did not.    *    *    *

"Q.  Where was he when you saw him after you saw him standing on the north shoulder?

"A.  In front of my car.    *    *    *

"Q.  And at that time your car was back over on the south side of the pavement?

"A.  Partly.    *    *    *    I had gotten across on the south side with my front wheel straightened. I wouldn't say my back wheels were clear across. I imagine I must have been fully across and straightened because my front wheels were straightened,

completely on the south side of the pavement.

"*Q*.   So, you did not see him cross from the north shoulder down to the south side of the road?

"*A*.   Not until he got in front of my car.   *   *   *

"I didn't see Fred Malone cross from the north shoulder of Nine Mile road to a point two feet south of the center where I struck him.   I saw him just before my car struck him.   *   *   *

"I put my brakes on and I hit him.   *   *   *

"*Q*.   Now, you didn't see him until he was right out there in.front of your left fender, did you?

"*A*.   That's right.   *   *   *

"I saw him when he would be almost even with the car, when he took that last step in front of the car.   *   *   *

"There were other men who were at the side of the highway.   *   *   *   I knew those workmen were apt to go out in the path of my vehicle.   I was keeping a lookout at those men."

Plaintiff testified in part:

"I worked on the construction job at Nine Mile road near Mound road.   We had a tool wagon on the northeast corner of Mound and Nine Mile roads, I kept my tools in there.   *   *   *

"That morning when I reported for work I reported at the tool wagon.   *   *   *   After I left the tool wagon, I walked east on the north side of Nine Mile road.   *   *   *

"I had to walk east about a ·quarter of a mile from Mound road,   *   *   *   where the tool box was, to cross over to where the work was.   I crossed the street in front (east) of the back filler.   *   *   *

"Before I started across, I looked both ways. There were no cars coming from the left; I looked back to my right and saw a car, Mrs. Vining's car. That car was on the north side of the pavement.

"*Q*.   How far away was the car?

"*A*.   I can't figure out how far.   *   *   *

"When I was about two feet and a half south of the center line, the car struck me.   *   *   *

"*Q.* Then you walked from the north to the south at a point about 50 feet past the back filler?

"*A.* Yes.

"There were no other cars anywhere in sight at that time; just this one car driven by Mrs. Vining."

Defendant driver saw plaintiff standing on the north side of the pavement and, although her view was unobstructed, she did not again observe him until the instant before the collision. Her testimony, together with other evidence and the physical facts and circumstances surrounding the accident, clearly presented a question of fact for jury determination as to whether or not she was negligent.

Assuming, for the purpose of this opinion, that defendant driver was negligent, the next and more serious question is whether or not plaintiff was guilty of contributory negligence as a matter of law. Immediately preceding the accident plaintiff was standing in a place of safety on the north side of the pavement. He admitted that he saw defendants' car approaching on the north side and that there were no other cars in sight. There were no obstructions on the pavement east of the back filler, and he could reasonably have expected defendant driver to return to the south (right) side of the highway after passing the back filler. Although he saw the car approaching only a short distance away, he left his place of safety and started to walk or run across the pavement. He admitted that he didn't "figure out how far" away the car was, and his testimony indicates that he failed to observe its speed and made no further observation after starting across the pavement. He left a place of safety and, without making proper observation, walked or ran into a zone of danger. In *Moldenhauer* v. *Smith,* 311 Mich. 265, 270, we said:

"Plaintiff was guilty of contributory negligence, as a matter of law, in leaving a place of safety and

proceeding into a zone of danger in the path of a rapidly-approaching automobile.''

Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances. In *Pearce* v. *Rodell,* 283 Mich. 19, 37, we approved the following charge by the trial court:

''Pedestrians upon the public highway have a right to assume in the first instance the driver of an automobile will use ordinary care and caution for the protection of pedestrians, nevertheless the pedestrian must not rest content on such assumption, if there comes a time where he knows, or ought to know by the exercise of reasonable care, he is being placed in danger. He must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances.''

''We have repeatedly held that one must look before entering a place of possible danger, such as crossing an intersection, and maintain observation while crossing.'' *Carey* v. *De Rose,* 286 Mich. 321, 323.

''If one is to make a proper observation of an oncoming car, * * * the observation must include not only the distance the approaching car is from the point of possible collision but also some observation and judgment of its approximate speed.'' *Ayers* v. *Andary,* 301 Mich. 418, 425.

''In many cases we have held that one is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the

oncoming vehicle until the instant before or at the time of collision." *Sonfilian* v. *Wiedman,* 291 Mich. 697, 700.

See, also, *Beers* v. *Arnot,* 308 Mich. 604; *Wimmer* v. *Coleman,* 307 Mich. 413; *Francis* v. *Rumsey,* 303 Mich. 526; *Sloan* v. *Ambrose,* 300 Mich. 188; *Dubeau* v. *Bordeau,* 291 Mich. 418; *Haley* v. *Grosse Ile Rapid Transit Co.,* 290 Mich. 373; *DeJager* v. *Vandenberg,* 288 Mich. 136 (6 N. C. C. A. [N. S.] 341); *Pomeroy* v. *Dykema,* 256 Mich. 100.

The burden was on plaintiff to prove not only that defendant driver was negligent but that he himself was free from contributory negligence. *Batchelor* v. *Famous Cleaners & Dyers, Inc.,* 310 Mich. 654. Plaintiff admitted that when he stood at the north side of the pavement, he saw defendants' car approaching. He saw, or is presumed to have seen, the car as it turned back to the south side of the pavement, because his view was unobstructed and the car was plainly visible. He failed to observe and form a judgment as to the speed of the approaching car and its distance from him. He started across the pavement in the face of impending danger and without continuing his observation. The record is convincing that had plaintiff made proper observation, he could easily have avoided the accident. The conclusion is inescapable that he was guilty of contributory negligence as a matter of law.

The trial court might properly have granted defendants' motion for a directed verdict. The judgment for plaintiff is reversed without a new trial. Defendants may recover costs of both courts.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.