DAY *v*. TROYER.

1. AUTOMOBILES—PEDESTRIANS—POINT OF IMPACT—QUESTION FOR JURY.

A question of fact was presented to jury as to point of impact between northbound plaintiff 71-year-old pedestrian on east side of intersection and left-turning southbound defendant trucker, where defendant claimed plaintiff had not reached the center of the street and plaintiff testified that she was halfway across or a little over.

2. SAME—PEDESTRIANS—CENTER OF STREET—OBSERVATION TO LEFT— LEFT-TURNING TRUCK.

Trial court's instruction that he gave plaintiff's request to charge that pedestrian who walks out into a street and passes the center thereof is not obliged to look to his left where vehicles might be approaching on the wrong side as the pedestrian

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur, Automobiles §§ 668, 675, 692.
[2, 7] 5 Am Jur, Automobiles §§ 737, 739.
[3, 4] 5 Am Jur, Automobiles §§ 451, 452.
[3, 5] Duty of pedestrian before crossing street to look for vehicles approaching on intersecting street. 9 ALR 1248; 44 ALR 1299.
[5] 5 Am Jur, Automobiles §§ 703, 705.
[6] 3 Am Jur, Appeal and Error § 887.
[8] 15 Am Jur, Damages §§ 205, 329.
[9] 15 Am Jur, Damages §§ 72, 206.
[10] 15 Am Jur, Damages §§ 209, 210.

has a right to assume under those circumstances that the vehicles will obey the law and be on the proper side, in view of plaintiff's claim that she had passed the center of the street she was crossing and that oncoming left-turning defendant trucker was cutting the corner too close *held*, without fault.

3. SAME—PEDESTRIANS—CROSSING STREET—OBSERVATION.
A pedestrian, before crossing a street, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

4. SAME—PEDESTRIANS—ASSUMPTION OF DUE CARE BY MOTORISTS.
Pedestrians upon the public highway have a right to assume the driver of an automobile will use ordinary care and caution for the protection of pedestrians but the latter must not rest content on such assumption when he knows or, by the exercise of reasonable care, should know he is being placed in danger, as he must take such care for his own safety as a reasonable, careful prudent person would under similar circumstances.

5. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—CROSSING AT INTERSECTION—QUESTION FOR JURY.
The issue of contributory negligence of plaintiff, a 71-year-old northbound pedestrian on the east side of a street who had waited for traffic light to turn in her favor and saw no southbound or eastbound traffic before starting across 60-foot street and who had continued to watch for such traffic while in south half of street was properly left for consideration by jury in action against trucker who had made a partial U-turn just north of the intersection, waited for the traffic light to turn in his favor and in making left turn struck plaintiff at or north of the center of the east-and-west street.

6. APPEAL AND ERROR—VERDICTS—GREAT WEIGHT OF EVIDENCE.
Verdict was not contrary to the great weight of the evidence, where there was substantial evidence tending to support it.

7. AUTOMOBILES—PEDESTRIANS—REQUEST TO CHARGE—INSTRUCTIONS—CROSSING STREET.
Failure to give defendant's proffered request that if plaintiff northbound pedestrian was in south half of street she was

crossing on east side of intersection at time of accident with southbound left-turning truck that plaintiff was guilty of contributory negligence was not error in view of instruction given as to plaintiff's duty to make preliminary and other observations as she started to cross and after proceeding onto the street.

8. DAMAGES—BURDEN OF SHOWING EXCESSIVENESS OF VERDICT.
The burden of showing that a verdict is excessive is upon the party claiming it to be excessive.

9. SAME—PAIN AND SUFFERING—PREJUDICE—SYMPATHY.
The awarding of damages for pain and suffering rests in the sound judgment of the trier of the facts and will not be disturbed, where not secured by improper methods, prejudice or sympathy.

10. SAME—PERMANENT INCAPACITY—PAIN AND SUFFERING.
Verdict of $6,000 to 71-year-old woman who sustained a sacroiliac strain which could cause permanent partial incapacity and permanent pain and suffering *held*, not excessive, notwithstanding total expenses for doctor bills, X-rays, glasses and clothing were only $189.01.

Appeal from Berrien; Robinson (Thomas N.), J. Submitted October 20, 1954. (Docket No. 83, Calendar No. 46,185.) Decided November 29, 1954.

Case by Bertha Day against Elroy Troyer, doing business as Troyer Poultry Farms, for damages for injury when struck by truck while crossing street. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*J. D. Hartwig* and *John L. Crow*, for plaintiff.

*Seymour, Seymour & Hughes (Dalton G. Seymour,* of counsel), for defendant.

SHARPE, J. Defendant, Elroy Troyer, seeks review of a judgment of $6,000 growing out of a collision between his truck and plaintiff, a pedestrian. The accident occurred between 2 and 3 p.m., on November

23, 1951, at the intersection of Main street and Fourth street in the city of Benton Harbor, Michigan. Main street runs east and west, and is approximately 60 feet in width from curb to curb. Fourth street runs north and south, and is approximately 48 feet in width from curb to curb. Plaintiff, a woman 71 years of age at the time of the accident, was walking in a northerly direction on the east side of Fourth street, intending to cross the intersection of the intersecting streets. As she approached the southeast intersection the light was against her and she waited until it changed. When the light changed, plaintiff looked to her left and saw no cars, she then looked across the street to the north and saw no cars. She then proceeded across the street in a northerly direction. Just prior to plaintiff's entry into the street defendant was double parked on Fourth street, about 40 feet north of Main street. After making a delivery of poultry he turned his truck around and headed south on Fourth street. When he arrived at the intersection the signal light was red and he stopped his truck. When the light turned green he entered the intersection and proceeded to make a left-hand turn onto Main street. Defendant observed plaintiff when he was about 15 feet from her. He put on his brakes, but collided with her. At the time of his entry into the intersection he was traveling at a speed of 8 to 12 miles an hour. At the time of the accident the sky was clear, the pavement dry and visibility good. As a result of the accident plaintiff suffered contusions on her left side, her shoulder and left hip and down her left leg. The cause came on for trial before a jury and resulted in a verdict in favor of plaintiff.

The record shows that at the close of plaintiff's case defendant moved for a directed verdict, based upon the theory that plaintiff was guilty of contrib-

utory negligence as a matter of law. The trial court took the motion under advisement by virtue of the authority contained in the Empson act.* At the close of all evidence defendant again moved his previous motion, and the court again took it under advisement. Following the conclusion of the trial and verdict, and before judgment was entered thereon, after due notice to counsel for plaintiff, a motion for judgment notwithstanding the verdict, was filed in said court on March 12, 1953, and regularly brought on for a hearing, which said motion was as follows:

"Now comes the above-named defendant, by his attorneys, Seymour, Seymour & Hughes, and moves the court to enter a judgment for the defendant notwithstanding the verdict for plaintiff heretofore entered by the jury in this cause, for the following reasons:

"1. That the facts presented by plaintiff wholly fail to make out a prima facie case entitling plaintiff to a verdict.

"2. That evidence presented by plaintiff fails to show any actionable negligence whatever on the part of defendant.

"3. The evidence presented by plaintiff shows that plaintiff was guilty of contributory negligence as a matter of law in that she (1) failed to make proper observation as to approaching traffic, (2) failed to observe approaching traffic and form a judgment as to its distance away and its speed, (3) failed to continue her observations while crossing the street, and (4) failed to exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

"4. The verdict of the jury rests only upon guess or conjecture and is not supported by any evidence presented on plaintiff's case."

* CL 1948. § 691.691 et seq. (Stat Ann and Stat Ann 1953 Cum Supp § 27.1461 et seq.).—REPORTER.

The court denied the above motion.

Thereafter defendant filed a motion for a new trial for the following reasons:

"Because the court erred in refusing the request to charge on the part of defendant as follows:

" 'I charge you that if you find it to be a fact that at the time of the accident plaintiff was between the center line of East Main street and the southerly curb of East Main street, then you must find that she was guilty of contributory negligence and your verdict must be for the defendant, no cause for action.'

"Because the verdict of the jury is grossly excessive.

"Because the court erred in putting the question of insurance to the jury, plaintiff's attorney having failed to show a good faith record why such question should be submitted to the jury, and the obvious purpose of such question was to prejudice the jury in favor of plaintiff."

The trial court denied defendant's motion for a new trial, whereupon defendant appeals. The principal issue of fact in this case is the point of impact. It is the claim of defendant that plaintiff had not reached the center of Main street at the instant of collision. In view of the fact that plaintiff testified that she was halfway across the street or a little over, we think a question of fact was presented to the jury on this issue. On this issue the trial court instructed the jury as follows:

"But if a person walks out into a street and passes the center of the street there is no duty at law imposed upon him or her to look in the direction to his left where vehicles might be approaching on the wrong side of the street; he has a right to assume under those circumstances that the vehicles will obey the law and be on the proper side of the street. That request for instruction is requested by the plaintiff

in view of the plaintiff's claim that she had crossed
the center line of East Main street and that the de-
fendant was, shall we say cutting the corner too
close so he was on his left side of Main street where
he should not have been.  That is a question of fact
for your determination."

We find no fault with this instruction.

Defendant urges that plaintiff was guilty of negli-
gence as a matter of law and relies upon *Huber* v.
*Paquette,* 293 Mich 370; *Long* v. *Garneau,* 319 Mich
291; *Malone* v. *Vining,* 313 Mich 315; and *Levine* v.
*Schonborn,* 336 Mich 312.  The facts in the instant
case show that when plaintiff reached the intersec-
tion of Main and Fourth streets she paused and
waited until the traffic light turned green in her
favor, but before stepping into the street she looked
to her left and to the north and saw no cars entering
the intersection.  She stated, "I was watching the
traffic light and my surroundings going across."  It
should be noted that just prior to the collision de-
fendant's truck was not coming from the west on
Main street, nor from her right on East Main street,
but was in the process of executing a partial "U"
turn on Fourth street and a left turn on East Main
street.  Plaintiff had a right to assume that any
car traveling east on Main street would travel on
the south half of Main street.  In *Huber* v. *Paquette,*
*supra,* the issue arose out of a collision between 2
automobiles at a street intersection.  When plain-
tiff entered the intersection she saw defendant ap-
proaching the intersection at a high rate of speed
and about 300 feet away.  She could have stopped
and avoided the accident, but relying on her right
to the right-of-way she proceeded into the intersec-
tion.  We there held that plaintiff was guilty of
contributory negligence as a matter of law when she
relied on the right-of-way principle in the face of
a known danger, she having the ability to prevent

the collision. In the case at bar plaintiff did not know of or have reason to believe that defendant would use the wrong side of the highway in traveling east on Main street.

In *Malone* v. *Vining, supra,* we said (p 321):

"Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances. In *Pearce* v. *Rodell,* 283 Mich 19, 37, we approved the following charge by the trial court:

" 'Pedestrians upon the public highway have a right to assume in the first instance the driver of an automobile will use ordinary care and caution for the protection of pedestrians, nevertheless the pedestrian must not rest content on such assumption, if there comes a time where he knows, or ought to know by the exercise of reasonable care, he is being placed in danger. He must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances.' "

In the above case we held plaintiff guilty of contributory negligence in crossing the pavement in the face of impending danger and without continuing his observation. In the case at bar plaintiff continued her observation while attempting to cross the intersection; moreover, she had no reason to believe there was impending danger. In *Long* v. *Garneau, supra,* plaintiff, a pedestrian, was walking south on the east side of Washington avenue in the city of Lansing. As she approached Kalamazoo street she stopped and waited for the green light and then proceeded to cross Kalamazoo street. At the same time defend-

ant in an automobile was traveling south on Washington avenue, and at the intersection turned left on Kalamazoo street and collided with plaintiff in the south half of Kalamazoo street. It appears that plaintiff made no observations for vehicles after she entered the intersection. She relied on a city ordinance giving pedestrians the right-of-way under such circumstances. She walked into defendant's automobile and was injured. We there held that she was guilty of contributory negligence as a matter of law (p 309):

"In the case at bar the appellant relies solely on the ordinance which declares that she had the right-of-way and that the defendant must yield it to her. While the defendant was guilty of negligence, this does not absolve the pedestrian from looking while crossing the street, which is what any ordinarily prudent person should do when crossing the street at a busy intersection. Maintaining one's right-of-way in the face of obvious danger, even though allowed by statute or ordinance to that effect, may be temporarily satisfying, but may ultimately result in disaster."

In the above case plaintiff had every reason to expect that traffic going north on Washington avenue might turn east on Kalamazoo street and that traffic going south on Washington avenue might make a left-hand turn at the intersection and go east on Kalamazoo street. There was greater potential danger to a pedestrian in crossing the south half of Kalamazoo street than on crossing the north half of Kalamazoo street. Again in the case at bar plaintiff made observations and was in about the center part of the intersection at the time she was struck. The facts and decision in the *Long Case, supra,* do not support defendant's claim in the case at bar that plaintiff was guilty of contributory negligence as a matter of law. In *Levine* v. *Schonborn, supra,* plain-

tiff walked due east across a north and south street.
Before crossing she looked to the north and south
and continued to do so while crossing. Defendants'
taxicab approached from the west and turned north
and struck plaintiff as she was about to step on the
curb on the east side of the street that she was cross-
ing. Defendants' cab traveled 50 feet or more on
the same street that plaintiff was crossing. Plaintiff
did not see the cab before it struck her. We there
said (pp 314, 315):

"In the instant case defendants' claim of contribu-
tory negligence as a matter of law does not rest, as
in *Krukowski* (*Krukowski* v. *Englehardt*, 276 Mich
136), on plaintiff's failure to look backwards for
traffic approaching on the street intersecting that
which she was crossing, but, rather, on her failure
to see the cab and to take steps to avert an accident
during the entire time that it was approaching di-
rectly from her right for a distance of 50 feet at a
rate of speed of 15 miles per hour. Consequently,
*Krukowski* is not in point.   *   *   *   Plaintiff's fail-
ure to act and negligence were of precisely that
description, barring the right to recover."

In our opinion the contributory negligence of
plaintiff presented a question of fact to be considered
by a jury.

It is also urged that the verdict of the jury is con-
trary to the great weight of the evidence. The rule
as to the duty of courts in determining this question
is well stated in *Werker* v. *McGrain,* 315 Mich 287,
where this Court held (p 291):

"If there is substantial evidence tending to sup-
port the verdict it should not be set aside even
though this Court might be in doubt as to the ulti-
mate facts."

In the case at bar there is a direct conflict between
plaintiff and her witnesses and defendant as to the

location of plaintiff and the truck at the time of the accident. Kenneth Truhn, a witness for plaintiff, gave 2 versions of the position of the truck at the time of the accident. It was for the jury to evaluate his testimony. We are not able to say that the verdict of the jury was against the great weight of the testimony.

It is also urged that the court was in error in failing to give the following instruction:

"I charge you that if you find it to be a fact that at the time of the accident plaintiff was between the center line of East Main street and the southerly curb of East Main street, then you must find that she was guilty of contributory negligence and your verdict must be for defendant, no cause for action."

The trial court instructed the jury, in part, as follows:

"I, also, members of the jury want to instruct you that it is a law of the State of Michigan that under present-day traffic conditions a pedestrian before crossing the street or highway must first make proper observation as to approaching traffic, second, observe approaching traffic and form a judgment as to its distance away and its speed; third, continue his or her observation while crossing the street or highway, and fourth, exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

"Furthermore, at the request of the defendant I instruct you as follows: If after considering the evidence in this case you find that the plaintiff, Mrs. Day, failed to make proper observation for approaching traffic while crossing the street then you must find she was guilty of contributory negligence and your verdict will be no cause for action. Thus, after considering the facts in this case you determine that the plaintiff before crossing the street failed to observe approaching traffic and form a

judgment as to its distance away and its speed, then you must find the plaintiff guilty of contributory negligence and your verdict will be no cause for action. If, after considering the facts in this case you determine the plaintiff before crossing the street— while crossing the street failed to continue her observations then you must find the plaintiff guilty of contributory negligence and your verdict should be no cause for action. Finally, if after considering the facts in this case you determine the plaintiff while crossing, before and during her crossing of this street failed to exercise that degree of care and exercise under like circumstances, then you must find the plaintiff guilty of contributory negligence and your verdict should be no cause for action."

In our opinion the instructions given by the court amply protected defendant's rights. It was not error to fail to give the requested instructions.

It is also urged that the verdict of the jury was grossly excessive. As above noted, the jury awarded plaintiff a verdict of $6,000, although her total expenses for doctor bills, X-rays, glasses and clothing were only $189.01.

The trial court in discussing this question on a motion for a new trial stated:

"The verdict of the jury was not excessive. Plaintiff suffered such pain following the injury that she was unable to get around or go down town by herself as she had always been able to do heretofore. She suffered a sacroiliac strain which could cause permanent partial incapacity and permanent pain and suffering. The question of past and future damages was submitted to the jury under full, fair and complete instructions. No claim is made, nor is there any basis in the record for any claim, that there was improper evidence, improper argument or improper conduct or comment calculated to influence the jury to bring in a verdict for an excessive amount. While the lack of abrasions to the skin

and absence of bone fracture, and the small amount of expenses for X-ray and medical treatment, are of value in determining damages, they are certainly not controlling. Numerous witnesses testified as to the injury to the plaintiff, all within the rules of evidence, and all without any apparent attempt to exaggerate or unduly emphasize the effect of her injury on plaintiff's present health. The jury saw and heard plaintiff and saw and heard these witnesses and there appears to be no reason for altering the finding of the jury based on what might or might not have been the facts and circumstances of some other case at some other time, and based on monetary purchasing power at the time such other case was decided."

In order to justify the granting of a new trial on the ground that the amount of the verdict is excessive, the burden is upon the party so claiming to show affirmatively that the verdict rendered is excessive. In *Torma* v. *Montgomery Ward & Company,* 336 Mich 468, the appellant claimed that the amount of the jury's award was excessive and out of reasonable proportion to the damages shown by the proofs. We there said (p 488):

"There is nothing in the record before us to indicate that the jury may have been prejudiced or biased by any occurrence in the course of the trial. It has been repeatedly recognized in prior decisions of this Court that the awarding of damages for pain and suffering rests in the sound judgment of the jury, or of the judge in a case tried without a jury. What was said in *Teeter* v. *Pugsley,* 319 Mich 508, 511, may well be repeated here:

" 'The amount allowed for pain and suffering must rest in the sound judgment of the trier of the facts. We do not substitute our judgment on this question unless a verdict has been secured by improper methods, prejudice, or sympathy. No such showing has been made; nor is this portion of the

judgment so great as to shock the judicial conscience. *Watrous* v. *Conor*, 266 Mich 397, 401.'

"See, also, *Brebner* v. *Sidney Hill Health System, Inc.*, 269 Mich 541; *Trafamczak* v. *Anys*, 320 Mich 653, 662; *Graham* v. *United Trucking Service, Inc.*, 327 Mich 694."

See, also, *Bramer* v. *Ames*, 338 Mich 226.

We conclude that all issues in this case were properly presented to the jury, and that under the facts the verdict was not excessive.

The judgment is affirmed, with costs.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.